Hillsborough,
Feb. 2, 1937.

THE TRAVELERS INSURANCE CO.

*v.*

RICHARD F. GREENOUGH & *a.*

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Booth* orally), for the plaintiff.

*John J. Sheehan* (by brief), for certain defendants.

ALLEN, C. J.   This clause is a part of the policy: "The coverage provided herein to a person responsible for the operation of the named Assured's motor vehicle with his express or implied consent is extended to uses authorized by such person whether or not the particular use was authorized by the named Assured."

The clause did not promise indemnity for a use unpermitted by the named assured. No action on the policy could be successfully maintained without proof of a permitted use. *Raymond* v. *Company*, 86 N. H. 93. A use not consented to is uninsured equally with a forbidden use. By no fair construction of the clause is unauthorized use insured. Uses authorized by express or implied consent, whether or not specified, are the limits of coverage. The phrase relating to a particular use not "authorized" by the named assured signifies an unspecified use findably within an authorized use. The phrase might be more clearly worded to show the meaning, but it is the only reasonable meaning. Any other construction would lead to a result of coverage for any unpermitted use by one entitled to use for some purposes. No policy holder would reasonably believe he had coverage to such an extent. And no presumption arises that permitted use for certain purposes includes use for other purposes not incidental to those specified or fairly to be found to be within the scope of the permission.

In respect to the burden of proof, "when an insurer desires to raise the question whether the liability charged is one covered by the policy, it should be done seasonably, and, in any event, before the plaintiff has been prejudiced by the delay. . . . . Ordinarily, and in the absence of agreement of the parties, the issue is one calling for preliminary presentation, so that the insurer's right or duty to defend the action for negligence may be first determined." *Sauriolle* v. *O'Gorman*, 86 N. H. 39, 49. "The declaratory judgment act (Laws 1929, c. 86) provides a convenient procedure for determining such a question, . . ." *American &c. Co.* v. *Garage*, 86 N. H. 362, 364.

The effect of the act "is simply to make a controversy over a legal or equitable right or title justiciable at an earlier stage of the controversy than that which gave rise to a cause of action at common law, or to enable the normal defendant to institute the proceedings. It makes no difference whether the claim be in positive or negative form, or whether it involves issues of fact . . . Claim of legal or equitable right on the one hand and its denial on behalf of an adverse interest constitute a cause for proceeding for a declaratory judgment." *Faulkner* v. *Keene*, 85 N. H. 147, 155. "Prevention not merely of threatened wrongs but prevention of uncertainty and misunderstanding in the assertion of rights" (*Ib.*, 156) is designed to be attained by the act.

If the proceeding to determine the insurer's liability were one brought against it, the general burden of proof would rest upon its

adversary. It would be on the defensive, and a case against it would require a balance of proof to warrant a judgment against it. It is no less on the defensive here. Whatever the form of the proceeding, and notwithstanding its nominal position as a plaintiff, the real situation is that it is defending against a claim of its liability. The relief it seeks is primarily to have the claim adjudicated. Its position that the claim is without merit is necessary, in order to show that the claim is a controverted one. By instituting the litigation it compels the claimant to take action in assertion of his claim. He is required to establish it to entitle it to validity. The plaintiff does not prevail unless the claim is defeated, but the claim is defeated if it is not proved, and it is for the claimant to furnish the proof.

This view is thought to be just and fair. A contrary one would place the plaintiff in a position of undue disadvantage. Having the right to an adjudication of the claim without waiting for the claimant to institute legal proceedings, it ought not to suffer and to have to pay a price by exercising its right. No commendation of justice is perceived in making the plaintiff worse off by seeking a disposal of the contentions between it and the claimant than by awaiting litigation commenced by the latter. This particularly applies to a case like that here presented. The plaintiff may not defend the actions at law without admitting its liability to indemnify, and if it declines to defend, it acts at the peril of a subsequent judgment of liability when the opportunity to defend the actions has passed, unless it obtains determination of its liability to defend before trial of the actions. *Sauriolle* v. *O'Gorman*, 86 N. H. 39, 49, and cases cited.

The situation is comparable with a normal defendant's efforts to obtain early disposal of a suit over a normal plaintiff's objections. Burden of proof is not imposed according to priority in taking legal steps to determine issues. And the declaratory judgment act discloses no purpose to shift the burden upon a party merely because he avails himself of the act. The statement of the act that a petition may be brought "to determine the question as between the parties" does not change their relative normal positions in which one seeking redress must establish issues of fact in his favor by greater weight of evidence. Here redress is not sought except in the sense of relief from uncertainty. The right to have a disputed claim adjudicated does not predicate a duty to prove the claim unfounded.

There is no strict and rigid rule that the primary burden of proof is on the party who brings suit. Generally speaking, it is taken for granted. But it is because of expediency and inherent justice, and

not because of initiative action. "The truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations. ... There is, then, no one principle, or set of harmonious principles, which afford a sure and universal test for the solution of a given case. The logic of the situation does not demand such a test; it would be useless to attempt to discover or to invent one; and the state of the law does not justify us in saying that it has accepted any. There are merely specific rules for specific cases, resting for their ultimate basis upon broad and undefined reasons of experience and fairness." Wigmore, Ev., s. 2486.

*Judgment for the plaintiff.*

MARBLE, and PAGE, JJ., did not sit: the others concurred.