■ MILDRED L. BEECE, Respondent, v GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Appellant.

Patrick Beece, the deceased, was employed as an account supervisor and vice-president by the Geer Dubois Agency. He was insured through his employer for accidental death and dismemberment under an insurance policy issued by the defendant, the Guardian Life Insurance Company of America. The policy, *inter alia,* provided: "If an Employee, while insured for this insurance, under this policy, sustains accidental bodily injuries and within ninety days after such injuries are incurred, suffers the loss of life, sight or limb as a direct result of such injuries and independently of all other causes, The Insurance Company will, subject to all provisions of this policy and to the provisions hereinafter stated, pay in one sum to the Employee, if living, otherwise to the Beneficiary designated by the Employee, the amount of insurance shown in the 'Schedule of Insurance and Premium Rates' in this Policy for such loss, or one-half the amount of insurance, as indicated below." The policy excluded loss resulting from "Disease or bodily or mental infirmity, or medical or surgical treatment thereof or ptomaine or bacterial infection, except only septic infection of and through a visible wound, accidentally sustained."

On February 12, 1980, Patrick Beece was involved in an automobile accident on the Saw Mill River Parkway in Westchester County, and shortly thereafter died. At the time of the accident, the aforementioned insurance policy was "in full force and effect". Beece's widow and beneficiary, Mildred L. Beece, the plaintiff, filed a claim pursuant to the insurance policy, *inter alia,* for payment of the $100,000 accidental death benefit, which the defendant refused to pay.

On or about June 12, 1981, the plaintiff commenced this action by the service of a summons and complaint, seeking judgment against the defendant in the principal amount of $100,000. The defendant answered, generally denying the plaintiff's allegations, and alleging as an "affirmative defense" that "[t]he death of the insured resulted from disease or bodily infirmity."

At the close of the trial, the court instructed the jury in relevant part as follows:

"I said that in this case — I say to you in this case that the plaintiff has the burden of proof insofar as his case is concerned, or her case is concerned. That means that she must establish her cause of action by * * * a fair preponderance of the credible evidence * * *

"Now, just as she has the burden of proof upon her claim against the insurance company, the insurance company has put in an affirmative defense, which I shall discuss with you, and *the burden of proof is equally as great on the insurance company under that affirmative defense to prove their [sic] claim under that affirmative defense"* (emphasis added). The court added: "[T]he burden of proof is on Mrs. Beece under the rules which I've given you, to establish both that the death of Mr. Beece was accidental and that it resulted directly from accident and independently of all other causes". However, the court went on to charge:

"The defendant, however, sets up an affirmative defense under the exclusion clause I read to you to the effect that the death of the insured resulted from disease or bodily infirmity.

"That is — those are the issues. That's the issue you must determine. Whether it was an accidental death which would entitle Mrs. Beece to the double indemnity provisions of the policy, or whether or not the death was caused as alleged by the insurance company under their affirmative defense by — resulted, the death resulted from disease or bodily infirmity."
Finally, the court instructed the jury: "And I've stated to you that the plaintiff has the burden of establishing her cause of

action which I've explained to you, *and the defendant has the burden of establishing the affirmative defense, which I have explained to you*" (emphasis added).

The defendant objected to the charge, arguing that it "shift[ed] the burden of proof on the issue of exclusion." The court disagreed and overruled the objection, to which the defendant excepted.

The jury returned a unanimous general verdict in the plaintiff's favor, and judgment was entered awarding the plaintiff the sum of $133,734.60 to cover the amount due under the insurance policy, interest and costs. The defendant appeals, contending that the judgment should be reversed and the complaint dismissed because the plaintiff failed to satisfy her burden of proof and because the court erroneously charged the jury.

We agree with the defendant that the court erroneously charged the jury. The law is clear that a named beneficiary seeking to recover accidental death benefits under an insurance policy such as the policy in the case at bar bears the burden of proving that the insured's death was accidental and that death resulted directly from the accident and independently of all other causes (2 NYPJI 4:56). The fact that in its answer the defendant denominated as an "affirmative defense" its denial that death was accidental, is of no legal significance. The burden of proving accidental death and causation was on the plaintiff *ab initio* and did not shift merely because the defendant labeled its denial an "affirmative defense" (*see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3018:16, p 151; *but cf. Beare v Prudential Ins. Co.,* 66 AD2d 936). Pursuant to the court's instructions in the case at bar, the jury was erroneously led to believe that the defendant had the burden of proving by a fair preponderance of the evidence its "affirmative defense", viz.: that death "resulted from disease or bodily infirmity", whereas the court should have charged the jury that the burden was upon the plaintiff to prove by a fair preponderance of the evidence that the direct cause of death was accidental and independent of all other causes.

We have reviewed the defendant's contention that the plaintiff failed to satisfy her burden of proof and that, therefore, the complaint should be dismissed, and we conclude that it is without merit.

Therefore, defendant is granted a new trial. Mollen, P. J., Titone, Thompson and Lawrence, JJ., concur.